WEBSTER, Judge.
Petitioner, an inmate of the state correctional system, seeks review of a final order denying his amended petition requesting a writ of mandamus or habeas corpus. In his amended petition, petitioner had alleged that the retroactive cancellation by the Department of Corrections of 1,500 days of provisional credits pursuant to section 944.278, Florida Statutes (1993), constituted a violation of the Ex Post Facto Clause (art. I, § 10, cl. 1) of the United States Constitution. Concluding that there had been no violation of the Ex Post Facto Clause because petitioner had begun to commit the offenses which resulted in his incarceration before the statute providing for what later came to be known as provisional credits became effective, the trial court denied relief. We treat the request for review as a petition for a writ of certiorari. Sheley v. Florida Parole Comm’n, 720 So.2d 216, 23 Fla. L. Weekly S556 (Fla. Oct. 22, 1998). Because we conclude that the trial court’s order constituted a departure from the essential requirements of law, we grant the petition, vacate the order, and remand for further proceedings.
Petitioner alleged that, in July 1988, he was convicted of some 87 counts of racketeering, organized fraud, sale of unregistered securities, grand theft,’ schemes to defraud and mortgage brokerage fraud, for which he received concurrent sentences totaling 30 years. The offenses had been alleged to *1195 have been committed over periods commencing as early as April 1, 1983, and ending as late as April 30,1985.
While in prison, petitioner received 1,500 days of provisional credits between August 1988 and January 1991. In 1993, the Department canceled all of petitioner’s provisional credits pursuant to section 944.278, Florida Statutes (1993). Petitioner then sought administrative relief from the Department, claiming that the application of section 944.278 to the credits he had already received constituted a violation of the Ex Post Facto Clause, and citing Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). The Department denied relief on the ground that petitioner’s offenses had begun before the first early release statute designed to alleviate prison overcrowding had become effective.
Having exhausted his administrative remedies, petitioner sought relief in the trial court. He again claimed that the application of section 944.278 to the credits he had already received constituted a violation of the Ex Post Facto Clause, and again cited Lynce in support of his position. In response to an order to show cause, the Department argued that Lynce was distinguishable, and that no ex post facto violation had occurred, because Lynce dealt with an offender who was otherwise eligible for provisional credits on the date of his offense, whereas petitioner’s offenses had commenced before any type of prison overcrowding statute had become effective. In his reply, petitioner took issue with the Department’s position for a number of reasons, including the fact that his offenses had been continuing in nature, and had extended past the effective date of the first overcrowding statute. The trial court accepted the Department’s argument, and denied the petition. Petitioner now seeks relief in this court.
In 1983, the legislature passed a statute creating what came to be known as “emergency gain-time” as part of an effort to alleviate prison overcrowding. The statute, which became effective on June 15, 1983, provided that such gain-time was to be awarded to eligible inmates whenever the state prison system exceeded 98% of its lawful capacity. § 944.598, Fla. Stat. (1983); Ch. 83-131, §§ 3, 5, 43, at 437, 438, 463, Laws of Fla. The capacity threshold was raised from 98% to 99% in 1986. § 944.598, Fla. Stat. (Supp. 1986); Ch. 86-46, § 1, at 166, Laws of Fla. In 1987, the legislature created a second type of overcrowding gain-time, which it called “administrative gain-time.” It was to be awarded to eligible inmates when the prison system reached 98% of its lawful capacity. § 944.276, Fla. Stat. (1987); Ch. 87-2, at 3-4, Laws of Fla. Effective July 1, 1988, administrative gain-time was replaced by “provisional credits,” which were similar except that they were to be awarded when the prison system reached 97.5% of capacity. § 944.277, Fla. Stat. (Supp.1988); Ch. 88-122, §§ 5, 92, at 535-37, 572, Laws of Fla. Subsequently, in 1993, the legislature passed section 944.278 which, to the extent pertinent, read:
All awards of administrative gain-time under s. 944.276 and provisional credits under s. 944.277 are hereby canceled for all inmates serving a sentence or combined sentences in the custody of the department, or serving a state sentence in the custody of another jurisdiction. Release dates of all inmates with 1 or more days of such awards shall be extended by the length of time equal to the number of days of administrative gain-time and provisional credits which were canceled.
(Footnotes omitted.) Ch. 93 — 406, § 35, at 2967, Laws of Fla. The statute which had authorized provisional credits was also repealed in 1993. Ch. 93-406, § 32, at 2966, Laws of Fla. The Department canceled petitioner’s previously awarded provisional credits pursuant to section 944.278.
Petitioner argues that the Department’s retroactive application of section 944.278 to cancel provisional credits previously awarded to him constitutes a violation of the Ex Post Facto Clause of the United States Constitution. U.S. Const., art. I, § 10, cl. 1. In support of his argument, he relies principally upon Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). In Lynce, a case which arose in Florida, the petitioner had been sentenced in 1986 to a 22-year prison term for attempted murder. In 1992, he was released from prison because he had *1196 accumulated 5,668 days of early release credits, including 1,860 days of provisional credits. Shortly after he had been released, the Florida Attorney General issued an opinion interpreting a 1992 statute as intended to cancel retroactively all provisional credits awarded to inmates convicted of murder and attempted murder. As a result, Lynce was arrested and returned to custody. He then filed a petition for a writ of habeas corpus, claiming that his reincarceration based upon the retroactive cancellation of his provisional credits violated the Ex Post Facto Clause of the United States Constitution. The respondents argued that the cancellation of Lynce’s provisional credits did not violate the Ex Post Facto Clause because the credits had been issued as a part of an administrative effort designed to alleviate prison overcrowding and, therefore, “were not an integral part of [Lynce’s] punishment” (id. at 895); and because the credits “had been awarded pursuant to statutes enacted after the date of [Lynce’s] offense.” Id. The Court rejected both arguments. With regard to the first, it said:
[T]he fact that the generous gain-time provisions ... were motivated more by the interest in avoiding overcrowding than by a desire to reward good behaviorf ] is not relevant to the essential inquiry demanded by the Ex Post Facto Clause: whether the cancellation of 1,860 days of accumulated provisional credits had the effect of lengthening petitioner’s period of incarceration.
Id. at 896. The Court held that the cancellation of Lynce’s provisional credits did result in lengthening his incarceration “because it resulted in his rearrest and prolonged his imprisonment.” Id. at 898. With regard to the respondents’ second argument, the Court concluded that, although the statute which addressed the award of gain-time to alleviate overcrowding had been amended from time-to-time between 1986 (when Lynce had committed his offense) and 1992, “its basic elements remained the same: the statute provided for reductions in a prisoner’s sentence when the population of the prison system exceeded a certain percentage of lawful capacity.” Id. at 899. Because Lynce “could have accumulated gain-time under the emergency gain-time provision [which was in effect at the time of his offense] in much the same manner as he did under the provisional credits statute” (id.), the Court held that “[t]he changes in the series of statutes authorizing the award of overcrowding gain-time[ ] d[id] not affect [Lynce’s] core ex post facto claim.” Id. Petitioner contends that Lynce mandates the relief he now requests because (1) he could have accumulated emergency gain-time under the version of the statute in effect when he committed his offenses in much the same manner that he did under the provisional credits statute; and (2) the retroactive cancellation of his previously awarded provisional credits clearly had the effect of lengthening his incarceration.
The Department responds that Lynce is inapplicable, and that no ex post facto violation occurred, because petitioner committed his offenses before the effective date of the first overcrowding statute on June 15, 1983. The Department concedes that petitioner’s offenses were alleged to have been continuing in nature, spanning a periqd from April 1, 1983 to April 30, 1985. However, it asserts that, pursuant to an internal policy, it selects the commencement date of continuing offenses in determining which version of a gain-time statute to apply. It maintains, further, that this court approved that policy in Ivey v. Chiles, 604 So.2d 542 (Fla. 1st DCA 1992), a case challenging, as an ex post facto violation, the versions of gain-time statutes applied to the appellant by the Department.
It is true that the Ivey decision mentions the Department’s representation that its policy was to use the beginning date of continuing offenses for purposes of determining which version of a gain-time statute to apply. However, that discussion appeal's to us to be dicta, because it has no bearing on the ultimate decision. Rather, the holding appears relatively clearly to be based upon the court’s assumption that the versions of the statutes applied by the Department to the appellant had the potential of permitting the appellant to receive more gain-time than the versions which the appellant claimed should be applied and that, therefore, there was no ex post facto violation.
*1197 We do not believe that the Department’s reliance upon an internal policy of using the beginning date of a continuing offense to determine the applicable gain-time statute can justify circumventing the intent behind the prohibition against ex post facto laws. Petitioner claims that he had been awarded 1,500 days of provisional credits on sentences for continuing offenses that ended after the effective date of the 1988 overcrowding statute, and that the Department retroactively applied a 1993 statute to cancel those credits, thereby lengthening his sentences by 1,500 days. As we read Lynce, the Department’s action violated the Ex Post Facto Clause. Because the trial court reached a contrary result, we hold that its order constitutes a departure from the essential requirements of law. Accordingly, we grant the petition for a writ of certiorari, vacate the order, and remand for further proceedings consistent with Lynce and this opinion. In doing so, we note the following comments by the Court in Lynce:
We recognize ... that although the differences in the statutes did not affect petitioner’s central entitlement to gain-time, they may have affected the precise amount of gain-time he received. Between 1988 and 1992, the provisional credits were authorized when the prison reached 97.5% capacity rather than 98% capacity as under the emergency gain-time statute. If the prison population did not exceed 98% of capacity between 1988 and 1992, and if petitioner received provisional credits during those years, there is force to the argument that the cancellation of that portion of the 1,860-day total did not violate the Ex Post Facto Clause. Because this point was not adequately developed earlier in the proceeding, and because it may not in any event affect petitioner’s entitlement to release, we leave it open for further consideration on remand.
117 S.Ct. at 899-900.
PETITION GRANTED; ORDER VACATED; and REMANDED with directions.
JOANOS and ALLEN, JJ., Concur.